UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MASTEROBJECTS, INC.,

    Plaintiff,

    v.

GOOGLE, INC.,

    Defendant.

_____/

No. C 11-1054 PJH

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Plaintiff's motion for partial summary judgment came on for hearing before this court on June 5, 2013. Plaintiff MasterObjects, Inc. ("plaintiff" or "MasterObjects") appeared through its counsel, Darrell Atkinson. Defendant Google Inc. ("defendant" or "Google") appeared through its counsel, Joseph Lee. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiff's motion as follows.

    MasterObjects seeks an order that Google is judicially estopped from making certain invalidity arguments regarding one prior art reference - namely, U.S. Patent No. 6,704,727 (referred to as "Kravets"). Specifically, MasterObjects argues that Google is precluded from arguing that Kravets (1) anticipates retrieving search results for predicted queries, and (2) anticipates a server-side cache containing prior queries and results thereto. MasterObjects points to Google's statements during prosecution of its own patents (which are not at issue in this action), and argues that Google should be precluded from taking inconsistent positions in this case.

    MasterObjects is correct about the general principle that Google should not be permitted to make statements in this case that are inconsistent with its statements to the

U.S. Patent and Trademark Office ("PTO"). As MasterObjects notes, judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later taking to their benefit a clearly inconsistent position. See Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-601 (9th Cir.1996). Judicial estoppel applies if the prior proceeding was "quasi-judicial" in nature. Id. at 604. Even though plaintiff has not cited authority applying judicial estoppel based on statements made to the PTO, it has cited authority showing that courts (including the Ninth Circuit) have characterized PTO proceedings as "quasi-judicial." See, e.g., Chamberlain v. Isen, 779 F.2d 522, 524 (9th Cir. 1985) ("PTO employees perform a 'quasi-judicial' function in examining patent applications.").

As an initial matter, MasterObjects has not yet identified any statements by Google in this case that are "clearly inconsistent" with its statements to the PTO. Instead, MasterObjects' motion is based on speculation about positions that Google may potentially take later in the case. While Google has served invalidity contentions identifying Kravets as an invalidating prior art reference, it has not made any statements regarding Kravets in front of this court. And to the extent that MasterObjects seeks a prophylactic order against future possible inconsistent statements by Google, the court finds that plaintiff has not met its burden of showing that there is "no genuine issue as to any material fact" as to the estoppel effect of Google's previous statements to the PTO. Fed. R. Civ. P. 56(a).

First, MasterObjects argues that Google should be estopped from arguing that Kravets anticipates "retrieving search results for predicted queries." In support of its argument, MasterObjects cites to a statement by Google, made during the prosecution of its own patents, that Kravets (in view of another prior art reference, referred to as "Monteverde") "does not include obtaining search results for predicted query completions." Dkt. 141, Ex. B at 15. The key dispute here centers around what Google meant by "search results" in that statement, and whether it conflicts with Google's position in this case. In this case, Google's position is that the term "search results," as used in the MasterObjects patents, refers only to the predicted search queries. That is, if a user were to type in the

letters "M-A-D" as part of a search query, the computer would retrieve a set of predicted full search queries, such as "Mad Men" or "Madison Square Garden." However, before the PTO, Google used the term "search results" to refer to something different. Google explained to the PTO that Kravets did disclose the prediction of full search queries based on partial search queries, but did not disclose the retrieval of actual web content responsive to those predicted search queries. Thus, in arguing to the PTO that Kravets did not disclose "retrieving search results," Google was defining "search results" as the actual web content (as opposed to the predicted queries). Google thus argues that any perceived inconsistency is explained by the different possible meanings of "search results." In other words, if "search results" refers only to the predicted search queries, then Kravets does disclose "retrieving search results." If "search results" refers to the actual web content responsive to those queries, then Kravets does not disclose "retrieving search results."

    The court agrees that the term "search results" could have a different meaning in this case, in the context of the patents-in-suit, than it had during prosecution of Google's patents. The court further notes that the term "search results" was not submitted for construction in this case. For these reasons, the court finds that MasterObjects cannot establish that there is "no genuine issue of material fact" as to the estoppel effect of Google's statements regarding Kravets' disclosure of "retrieving search results for predicted queries."

    Second, MasterObjects argues that Google should be estopped from arguing that Kravets anticipates "a server-side cache containing prior queries and results thereto." MasterObjects' brief is not clear in identifying the specific Google statements that support this estoppel argument, but it appears that MasterObjects' argument is based on Google's statements that "Kravets in view of Monteverde does not expressly disclose wherein responding to receiving the portion of the search query further comprise[s] caching the search results" and that "the existence of a cache at the server in Kravets does not teach using a cache for predicted search results." Dkt. 141, Ex. B at 12, 13. Here, again, there is some confusion regarding the use of the term "search results." During prosecution of its

3

1 patents, Google pointed out the different types of "search results" that could be stored in a
2 cache:

3 Applicants disagree that caching of search results <u>as claimed here</u> was 'commonly used' at the time of Kravets and Monteverde. In this regard, applicants note a key difference between caching of data that has already been retrieved and used versus retrieving into cache memory for potential future use (prefetching). For example, if one user issues a query for 'Michael Jackson,' the query server retrieves the search results for that search query <u>and</u> caches the search results so that the search results will be available more quickly for the next user who searches for 'Michael Jackson.' While this form of caching may be fairly common, caching of prefetched search results for possible future queries appears to have been unknown prior to the present application.

9 <u>Id.</u> at 12 (emphasis in original).

10 Google later explained that the "limited discussion of caching data in Kravets does
11 not constitute teaching of the general concept of prefetching search results for predicted
12 queries." <u>Id.</u> at 13. Based on these statements, it appears that Google was willing to
13 concede that Kravets made some disclosure of a server-side cache. However, Google
14 drew a distinction between a server-side cache that stored search results (i.e., web
15 content) for search queries that the user had <u>already</u> run, versus a server-side cache that
16 stored search results for search queries that the user <u>may run</u> in the future. Google argued
17 that, even if Kravets disclosed the former, it did not disclose the latter. MasterObjects'
18 requested order, which refers only to "a server-side cache containing prior queries and
19 results thereto," would erase the distinction between these two types of server-side
20 caches. As before, it is not clear that the term "search results" is used the same way in this
21 case than it was in Google's PTO proceedings. Before the PTO, Google used the term
22 "search results" to refer only to the "prefetched" web content, responsive to search queries
23 that had not yet been run by the user. In this case, Google argues that "the data to be
24 cached in the patents-in-suit are 'query strings <u>previously communicated</u> from the clients,
25 or content results <u>previously returned</u> from the server.'" Dkt. 150 at 8 (emphasis in
26 original). Because of these different uses of the term "search results," MasterObjects
27 cannot establish that there is "no genuine issue of material fact" as to the estoppel effect of
28 Google's statements regarding Kravets' disclosure of "a server-side cache containing prior

4

queries and results thereto."

Thus, while MasterObjects has identified past statements by Google that could be relevant to the present case, the court finds that MasterObjects' motion is premature as brought. In prosecuting its own patents, Google took the position that Kravets did not disclose the retrieval, or the server-side caching, of web content responsive to predicted search queries. So far, Google has not taken an inconsistent position in this case, nor has MasterObjects shown that Google's previous statements are directly applicable to this case. MasterObjects' motion for partial summary judgment is DENIED.

Google has also filed a motion to seal exhibit 11 of its supporting declaration. As the court stated at the hearing, Google did not narrowly tailor its sealing request to cover only sealable material, and the motion to seal is thus DENIED. Moreover, as the exhibit was not relied on by the court in ruling on this motion, a properly redacted version need not be filed.

**IT IS SO ORDERED**.

Dated: June 11, 2013

PHYLLIS J. HAMILTON
United States District Judge